UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
INDIANA ABREU, MADELINE MARTINEZ,  :    14 Civ. 9240 (JCF)
and JAIRO MARTINEZ,                :
                                   :        MEMORANDUM
              Plaintiffs,          :    AND   ORDER
                                   :
     - against -                   :
                                   :
CAROLYN W. COLVIN, Acting          :
Commissioner of Social Security,   :
                                   :
              Defendant.           :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     There are two issues central to this case.  The first is
whether, under New York law, a DNA test is a sufficient basis for
overcoming the presumption that a child born to a married woman was
fathered by her husband.  This question arises in the context of an
application for child's insurance benefits, to which the surviving
child of a deceased wage earner is entitled under the Social
Security Act (the "Act").  The second critical issue is whether,
despite definitive evidence that an applicant is not the biological
offspring of the wage earner, she may nevertheless be "deemed" his
child under the Act.

     The plaintiffs, Indiana Abreu and her children, Madeline and
Jairo Martinez, bring this action pursuant to section 205(g) of the
Act, 42 U.S.C. § 405(g), seeking reversal of a decision of the
Commissioner of Social Security (the "Commissioner"), denying Ms.

1

Abreu's application for benefits on behalf Madeline and Jairo.  The plaintiffs have moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  The Commissioner has cross-moved, seeking a remand for further administrative proceedings.  The parties have consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c).  For the reasons that follow, the plaintiffs' motion is granted and the Commissioner's motion is denied.

<u>Background</u>

Indiana Abreu married Santiago Martinez on August 18, 1986. (R. at 201).[1]  On September 15, 1988, Ms. Abreu gave birth to her first child, Madeline.  (R. at 152, 384, 467).  Three years later, her son Jairo was born on September 15, 1991.  (R. at 153, 383, 466).  In both instances, the birth certificates filed with the Bureau of Vital Records of the New York City Department of Health at the time of birth listed Ms. Abreu as the mother and Mr. Martinez as the father.  (R. at 152-53, 383-84, 466-67).

Mr. Martinez suffered from alcoholism, and, as a result, sometime after the birth of Jairo, Ms. Abreu initiated divorce proceedings.  (R. at 549-50).  After the couple separated, Ms. Abreu obtained a Family Court order of support on March 10, 1992,

---

[1] "R." refers to the administrative record filed with the Commissioner's answer.

requiring Mr. Martinez to provide financial assistance for Madeline and Jairo, whom the order identified as his children. (R. at 293-94). The divorce was made final in the Dominican Republic on April 22, 1993 (Tr. at 203-09), and the order of support remained in effect until December 1996, when Mr. Martinez sought to terminate it because he was unemployed (R. at 80-81, 397-99, 480-82).

Mr. Martinez died on December 23, 2000 (R. at 70), and on April 20, 2001, Ms. Abreu filed an application for child's insurance benefits on behalf of Madeline, based on Mr. Martinez's insured status. (R. at 70-72). Ms. Abreu did not seek benefits on behalf of Jairo, noting in the application that he was not the biological son of Mr. Martinez. (R. at 71-72). Madeline was found eligible for a lump-sum death benefit and survivor benefits retroactive to December 2000. (R. at 77-96).

At some point thereafter, Ms. Abreu apparently initiated paternity proceedings, alleging that Madeline's actual father was a man named Ubaldo Dominguez. (R. at 103). She had previously had Madeline's surname changed to Dominguez on the child's birth certificate. (R. at 71). A DNA test was performed in September 2002, which confirmed Mr. Dominguez's paternity with 99.99 percent probability. (R. at 97-103).

Ms. Abreu then presented the report of the DNA test to the Social Security Administration (the "SSA") and requested that

3

Madeline's benefits be terminated, as she was not the child of Mr. Martinez. (R. at 104-05). According to Ms. Abreu, she came forward with this information because she had joined a church and felt guilty about having obtained benefits on the basis of false information. (R. at 169). She also stated that Jairo, too, was the child of Mr. Dominguez rather than Mr. Martinez. (R. at 169). On April 17, 2003, the SSA rescinded Madeline's eligibility for survivor benefits and ordered repayment of the benefits already provided, including the lump-sum death benefit. (R. at 107-15).

On October 22, 2003, Ms. Abreu filed a new application for survivor benefits on behalf of Madeline and on behalf of Jairo as well. (R. at 122-47). The SSA denied her application based on the DNA test for Madeline and Ms. Abreu's prior statements regarding the paternity of both children. (R. at 149). Ms. Abreu sought reconsideration, alleging that she had made a "mistake" in stating that Mr. Martinez was not the father of her children because she had been sick and depressed at the time. (R. at 156). On July 20, 2006, the SSA denied reconsideration. (R. at 44-45). She then sought review by an administrative law judge ("ALJ"), the first of a series of administrative proceedings that will be described below.

Statutory Scheme

The Social Security Act provides for child's survivor benefits

for the dependent minor children of deceased insured workers.  42 U.S.C. § 402(d); see Bosco ex rel. B.B. v. Astrue, No. 10 Civ. 7544, 2013 WL 3358016, at *4 (S.D.N.Y. Feb. 19, 2013), aff'd in relevant part, 2013 WL 3357161 (S.D.N.Y. July 3, 2013).   An applicant is eligible for benefits if "[1] she meets the Act's definition of 'child,' [2] is unmarried, [3] is below specified age limits (18 or 19) or is under a disability which began prior to age 22, and [4] was dependent on the insured at the time of the insured's death." Astrue v. Capato, __ U.S. __, __, 132 S. Ct. 2021, 2027 (2012) (citing 42 U.S.C. § 402(d)(1)); see Bosco, 2013 WL 3358016, at *4; McLaughlin v. Astrue, No. 10 CV 506, 2012 WL 2449938, at *2 (E.D.N.Y. June 27, 2012); Thomas ex rel. N.T. v. Astrue, 674 F. Supp. 2d 507, 520 (S.D.N.Y. 2009); Howell ex rel. Howell v. Barnhart, 265 F. Supp. 2d 268, 270-71 (S.D.N.Y. 2003). The contested issue here is whether Madeline and Jairo each qualify as a "child" of Mr. Martinez.

A. Status as a "Child"

The Social Security Act defines "child" as, among other things, "the child or legally adopted child of an individual." 42 U.S.C. § 416(e). Fortunately, this "vague tautology," Bosco, 2013 WL 3358016, at *4; see Capato, __ U.S. at __, 132 S. Ct. at 2029 (referring to § 416(e)'s "tautological definition"), is not the exclusive statutory definition. Rather, 42 U.S.C. § 416(h) further

addresses the term and provides multiple pathways by which an applicant can be deemed the "child" of the insured.  The primary route incorporates state intestacy law:

> In determining whether an applicant is the child or parent of a fully or currently insured individual . . ., the Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death . . . .

42 U.S.C. § 416(h)(2)(A); see Capato, __ U.S. at __, 132 S. Ct. at 2028.

Alternatively, even if state intestacy law would not recognize the applicant as the child of the wage earner, the Act deems her so "if the insured and the other parent went through a marriage ceremony that would have been valid but for certain legal impediments." Capato, __ U.S. at __, 132 S. Ct. at 2028 (citing 42 U.S.C. § 416(h)(2)(B)).

Similarly, an applicant is deemed a "child" if the insured acknowledged her in writing as his daughter.  42 U.S.C. § 416(h)(3)(C)(i)(I); Capato, __ U.S. at __, 132 S. Ct. at 2028.

Next, the applicant is considered the child of the insured if, prior to the death of the insured, the insured had been decreed by a court to be the parent of the applicant.  42 U.S.C. § 416(h)(3)(C)(i)(II); Capato, __ U.S. at __, 132 S. Ct. at 2028.

6

Further, the applicant is deemed the insured's child if the insured "had been ordered by a court to contribute to the support of the applicant because the applicant was his or her son or daughter." 42 U.S.C. § 416(h)(3)(C)(i)(III); see Capato, __ U.S. at __, 132 S. Ct. at 2028.

Finally, "an applicant may gain 'child' status upon proof that the insured individual was the applicant's parent and 'was living with or contributing to the support of the applicant' when the insured individual died." Capato, __ U.S. at __, 132 S. Ct. at 2028 (quoting § 416(h)(3)(C)(ii)).[2]  In order to meet this test, "[c]ontributions must be made regularly and must be large enough to meet an important part of [the applicant's] ordinary living costs," 20 C.F.R. § 404.366, and the applicant bears the burden of producing evidence of contribution, 20 C.F.R. § 404.704.

---

[2] The regulations implementing the Social Security Act appear to limit the latter four pathways to child status to circumstances where the applicant's surviving parent "has not married the insured." 20 C.F.R. § 404.355(a)(3), (4).  Thus, these deeming provisions would seem at first glance to be inapplicable in this case, since Ms. Abreu (the mother of the applicants) was married to Mr. Martinez (the insured).  But, to the extent that the regulations could be read to define eligibility more narrowly than is provided for by the statute, they would be ineffective.  In any event, the Commissioner does not advance any such interpretation of the regulations in this case.  (Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and In Support of the Commissioner's Cross-Motion for Remand Pursuant to the Fourth Sentence of 42 U.S.C. § 405(g) ("Def. Memo.") at 16-18.

B. Dependency

Whether an applicant is considered to have been dependent upon the insured wage earner is closely tied to whether she is deemed a child.  For example, a child is considered dependent on the wage earner if, at the time of death, the wage earner was living with or contributing to the support of the child.  42 U.S.C. § 402(d)(3).  Alternatively, an applicant is deemed to be dependent if she is deemed to be the wage earner's child by means of one of the alternative pathways, including intestacy law, 20 C.F.R. §§ 404.361(a) ("If you are the insured's natural child, as defined in § 404.355, you are considered dependent upon him or her . . . ."), 404.355(a)(1) (deeming as the insured's natural child one who "could inherit personal property as [the insured's] natural child under State inheritance laws"), or pursuant to a court order of support.  See Capato, __ U.S. at __, 132 S. Ct. at 2027 n.3 ("[A]pplicants 'deemed' the child of an insured individual under § 416(h)(2)(B) or (h)(3) are also 'deemed legitimate,' hence dependent, even if not living with or receiving support from the parent.").

Proceedings Before the Social Security Administration

As noted above, after Ms. Abreu had initially applied for and begun receiving child's insurance benefits on behalf of Madeline, the benefits were terminated when she advised the SSA that Madeline

was not the child of Mr. Martinez, the insured.  On October 22,
2003, however, she submitted a new application on behalf of both
Madeline and Jairo.  (R. at 122-27).  When her application was
denied, a hearing was held before ALJ Kenneth L. Sheer.  On
December 2, 2008, ALJ Sheer issued a determination denying benefits
on the grounds that Ms. Abreu had testified that Mr. Marttinez was
not the father of either child and that the DNA test confirmed that
he was not the father of Madeline.  (R. at 59-62).  The ALJ issued
an amended decision on February 26, 2009, that differed only
insofar as it indicated that the post-hearing brief of Ms. Abreu's
attorney was included in the record.  (R. at 66-69).

Ms. Abreu sought review by the SSA's Appeals Council, which
vacated the decision and remanded for further proceedings.  (R. at
221-27).  The Appeals Council found as follows:

> [Ms. Abreu's] contention that the claimants are legitmate
> children of the wage earner is supported by N.Y. Fam. Ct.
> Act § 417 and 532 because they were born of parents who
> entered into a ceremonial marriage.  In addition, genetic
> marker and DNA tests are not ordered by the court if it
> is not in the best interest of the child(ren) born to a
> married woman.  In this case, although a DNA test
> established that the wage earner is not Madeline's
> biological father and Ms. Abreu publicly acknowledged
> that the wage earner is not Jario's [sic] biological
> father, he acknowledged paternal responsibilities for the
> children through a variety of acts, i.e., child support
> payments and hospital birth records.  New York State law
> also does not permit the termination of an already
> established parental relationship regardless of DNA
> tests.  Additionally, the results of a DNA test cannot
> undermine a paternal relationship, which had been

established while the parties were married.  In the best
interest of the children, equitable estoppel should be
applied because Ms. Abreu permitted a strong bond to be
formed between her husband and children.  Therefore, the
Appeals Council finds that the claimants have acquired
the status as the children of the wage earner, and they
are deemed surviving children of the wage earner in
accordance with section 216(h)(2)(A) of the Social
Security Act.

(R. at 224) (citations omitted).  The Appeals Council remanded,

directing the ALJ to consider each of the issues it had identified.

(R. at 225-26).  In addition, it noted that Santiago had fathered

another child, Christopher Martinez, who would be entitled to

benefits and whose interests could be adversely affected by an

award of benefits to Madeline and Jairo.  (R. at 225).

Accordingly, the Appeals Council directed the ALJ to consider this

issue as well.  (R. at 226).

On remand, the case was assigned to ALJ Paul A. Heymann.  He

held a new hearing, and, on September 2, 2011, issued a decision

denying Ms. Abreu's application.  (R. at 26-31).  He concluded that

the record did not demonstrate that Mr. Martinez either was or held

himself out to be the claimants' father.  (R. at 29).  Mr. Martinez

had never acknowledged in writing that either child was his.  (R.

at 29).  Nor was there a court declaration of paternity; while the

Family Court had ordered Mr. Martinez to pay child support, ALJ

Heymann found this order to have been based on Mr. Martinez's

marriage to Ms. Abreu, not on any order of filiation or

determination of paternity.  (R. at 29).  In response to the argument that the state may not delegitimize a child, ALJ Heymann found that Ms. Abreu, not the state, had undermined the presumption of legitimacy, both by obtaining the DNA test for Madeline and by changing the children's names to Dominguez.  (R. at 29).  Finally, the ALJ discounted Ms. Abreu's testimony regarding the extent to which Mr. Martinez had provided for the children.  (R. at 30).

When Ms. Abreu appealed from this determination, the Appeals Council was unable to locate the administrative record.  (R. at 427).  It therefore issued a decision on September 18, 2013, vacating ALJ Heymann's decision and remanding for a new hearing and reconstruction of the record.  (R. at 427-28).

ALJ Heymann conducted further proceedings, and on March 27, 2014, he issued a determination denying benefits for substantially the same reasons as in his prior decision.  (R. at 14-19).  This time, the Appeals Council denied Ms. Abreu's request for review. (R. at 3).  ALJ Heymann's decision thus became the final determination of the Commissioner.

<u>Discussion</u>

Normally, a court's review of the denial of social security benefits entails determining whether the Commissioner applied the correct legal standard and whether the ALJ's decision was supported by substantial evidence.  Tejada v. Apfel, 167 F.3d 770, 773 (2d

11

Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254, 2008 WL 4452359, at *8 (S.D.N.Y. April 29, 2008).  In this case, however, the Commissioner does not seek confirmation of the decision denying benefits; rather, she moves for remand for further development of the record and proper application of New York law.  (Def. Memo. at 1, 20-21).  The plaintiffs oppose remand and instead seek reversal of the ALJ's decision and an order awarding benefits.  (Memorandum of Law in Support of Plaintiffs' Motion for Judgment on the Pleadings ("Pl. Memo.") at 1, 15).  Remand is appropriate where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  On the other hand, an order reversing the Commissioner and awarding benefits is warranted "when the record provides persuasive proof of [entitlement] and a remand for further evidentiary proceedings would serve no purpose." Id.; accord Bradley v. Commissioner of Social Security, No. 12 Civ. 3200, 2015 WL 1069307, at *6 (S.D.N.Y. March 11, 2015); Rivera v. Barnhart, 379 F. Supp. 2d 599, 604 (S.D.N.Y. 2005).  The plaintiffs argue that the record establishes that Madeline and Jairo are entitled to benefits by virtue of (1) New York intestacy law, (2) principles of equitable estoppel, and (3) the Family Court order of support, and that there is no basis for reopening the administrative proceedings to consider the interests of Christopher Martinez.

A. <u>New York Intestacy Law</u>

New York follows what is known as Lord Mansfield's Rule: the presumption that a child born to a married woman is presumed to be the offspring of her husband.  <u>See</u> <u>In re Estate of Fay</u>, 44 N.Y.2d 137, 141-42, 404 N.Y.S.2d 554, 556 (1978); <u>In re Findlay</u>, 253 N.Y. 1, 7, 170 N.E. 471, 472-73 (1930); <u>State ex rel. H. v. P.</u>, 90 A.D.2d 434, 437-38, 457 N.Y.S.2d 488, 490-91 (1st Dep't 1982).  The plaintiffs argue that this presumption is irrebuttable.  (Tr. at 8).[3]  Not so.  "[T]he notion that the presumption of legitimacy is conclusive, such that a 'court would not listen to evidence casting doubt on [the] paternity' of a married woman's husband, was rejected long ago . . . ."  <u>In re Marilene S. v. David H.</u>, 63 A.D.3d 949, 950-51, 882 N.Y.S.2d 155, 157 (2d Dep't 2009) (alteration in original) (quoting <u>Findlay</u>, 253 N.Y. at 7, 170 N.E. at 472).  Indeed, the quotation from <u>Findlay</u> upon which the plaintiffs rely -- that the presumption "is 'one of the strongest and most persuasive' presumptions in the law" (Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Judgment on the Pleadings at 1) -- is incomplete.  What Judge Cardozo said in that case is this: "Potent, indeed, the presumption is, one of the strongest and most persuasive known to the law, <u>and yet subject to</u>

---

[3] "Tr." refers to the transcript of oral argument held on July 31, 2015.

the sway of reason." <u>Findlay</u>, 253 N.Y. at 7, 170 N.E. at 472 (internal citation omitted) (emphasis supplied).  He went on to note that courts had variously found that, in order to overcome the presumption, evidence must be "clear and convincing," "strong and irresistible," or "beyond all reasonable doubt."  <u>Id.</u> at 8, 170 N.E. at 473.  Judge Cardozo concluded that "[w]hat is meant by these pronouncements, however differently phrased, is this and nothing more, that the presumption will not fail unless common sense and reason are outraged by a holding that it abides."  <u>Id.</u>, 170 N.E. at 473.  As one court recently noted, "the presumption was never intended to suppress a truth and perpetuate a falsehood." <u>In re L.M. v. J.S.</u>, 6 Misc. 3d 151, 154, 787 N.Y.S.2d 833, 835 (Kings Fam. Ct. 2004) (citing <u>Sylvia B. v. Ben</u>, 70 Misc. 2d 572, 576, 334 N.Y.S.2d 229, 233 (Nassau Fam. Ct. 1972)).  Rather, "[t]he presumption of legitimacy, while still serving a laudable purpose, is nonetheless just another legal presumption to be used in the absence of conclusive evidence to the contrary." <u>L.M.</u>, 6 Misc. 3d at 154, 787 N.Y.S.2d at 835.  Indeed, in <u>Findlay</u> itself, the court found the presumption overcome because of strong evidence that the husband and wife were living far removed from each other during the relevant period.  <u>Findlay</u>, 253 N.Y. at 9-10, 170 N.E. at 473-74.

Here, the evidence rebutting the presumption is at least as powerful in regard to Madeline's paternity.  The DNA test revealed

a 99.99 percent probability that her biological father was Mr. Dominguez, not Mr. Martinez. (R. at 97-103). Such evidence is admissible, and indeed may be highly persuasive, under New York intestacy law. See Thomas v. Astrue, 674 F. Supp. 2d 507, 522-24 (S.D.N.Y. 2009) (finding presumption overcome under New York intestacy law and awarding child's insurance benefits where DNA showed deceased wage earner, not husband, to be father of child); In re Poldrugovaz, 50 A.D.3d 117, 118, 129, 851 N.Y.S.2d 254, 255, 263 (2d Dep't 2008) (approving DNA testing to determine inheritance rights of nonmarital child); In re Estate of Morningstar, 17 A.D.3d 1060, 1060, 794 N.Y.S.2d 205, 205-06 (4th Dep't 2005) ("The results of DNA testing may be used to satisfy [the] burden of establishing paternity [under New York intestacy law]"). Accordingly, it would not be appropriate to order an award of benefits to Madeline on the ground that the only viable conclusion is that she is the child of Mr. Martinez under New York intestacy law and therefore eligible under 42 U.S.C. § 416(h)(2)(A).

The issue is closer with respect to Jairo since no DNA test has been performed to determine his paternity. Nevertheless, Ms. Abreu's own statements that Mr. Dominguez was Jairo's biological father, her conduct in changing the name on the birth certificate to reflect this, and the fact that even when Ms. Abreu sought benefits on behalf of Madeline, she did not do so for Jairo, may

suffice to overcome the presumption.   Thus, New York intestacy law does not clearly mandate a finding that Jairo is Mr. Martinez's child.

B. <u>New York Public Policy</u>

The plaintiffs also argue that New York state law "provides assurance of legitimacy," and that this principle is undermined by a finding that Madeline and Jairo are not the children of Mr. Martinez.   (Pl. Memo. at 13-15).   For example, they point to <u>Richard B. v. Sandra B.B.</u>, 209 A.D.2d 139, 625 N.Y.S. 2d 127 (1st Dep't 1995), where the court reversed an order for a blood test to establish the paternity of a child.   The child was born into a marriage, but the parents subsequently divorced, and the husband was required to pay child support.   <u>Id.</u> at 140-41, 625 N.Y.S.2d at 128.   The husband, alleging that he had discovered that he had a serious fertility problem, now denied being the biological father of the child and sought to set aside the child support provisions of the divorce decree.   <u>Id.</u> at 141, 625 N.Y.S.2d at 128.   The court stated:

> While blood testing would, as the husband argues, settle the issue of the child's paternity, we are not convinced that, in the circumstances presented, he should be permitted to disclaim paternity and bastardize the child when his only apparent reason for doing so is to advance his own self-interest by avoiding his support obligation.

<u>Id.</u> at 142, 625 N.Y.S.2d at 129.   Thus, the court concluded that

"the husband should be estopped from pursuing his paternity challenge," and it rejected blood testing.  Id. at 143, 625 N.Y.S.2d at 129.  Similarly, in Shondel J. v. Mark D., 7 N.Y.3d 320, 820 N.Y.S.2d 199 (2006), the Court of Appeals held that "a man who has mistakenly represented himself as a child's father may be estopped from denying paternity, and made to pay child support, when the child justifiably relied on the man's representation of paternity, to the child's detriment." Id. at 324, 820 N.Y.S.2d at 200.  The court reached this conclusion even though a DNA test showed that the man paying support was not, in fact, the child's biological father.  Id. at 325, 820 N.Y.S.2d at 201.

While these cases reflect a strong state policy against delegitimizing a child, they are inapposite here.  They stand only for the proposition that a person may be barred from avoiding a support obligation by seeking to establish that a child's father is someone other than himself.  They do not undercut the principle that under New York intestacy law, the presumption of legitimacy can, in fact, be rebutted.  And, it is intestacy law that is incorporated by reference in the Social Security Act and the implementing regulations, not all aspects of state family law. Indeed, these two branches of the law often diverge, as they serve different purposes.  Intestacy law is designed to determine with finality the identity of the heirs of the decedent at the time of

death, thereby facilitating distribution of the estate.  Bosco, 2013 WL 3358016, at *9; In re Martin B., 17 Misc. 3d 198, 201, 841 N.Y.S.2d 207, 209 (N.Y. Surr. Ct. 2007) (finding modification in New York intestacy law "intended to ensure certainty in identifying persons interested in an estate and finality in its distribution"). Family law, by contrast, is intended to advance the best interests of the child.  Shonel J., 7 N.Y.3d at 329, 820 N.Y.S.2d at 204; Jose F.R. v. Reina C.A., 46 A.D.3d 564, 564, 846 N.Y.S.2d 630, 631 (3d Dep't 2007).  Accordingly, the estoppel cases on which the plaintiffs rely do not support reversal of the ALJ's determination.

C. Order of Support

But, as noted above, there are multiple avenues under the Act for achieving "child" status besides state intestacy law.  By one such route, the applicant is deemed the insured's child if the insured "had been ordered by a court to contribute to the support of the applicant because the applicant was his or her son or daughter."  42 U.S.C. § 416(h)(3)(C)(i)(III).  In this case, Ms. Abreu obtained an order of support from the Family Court on March 10, 1992, requiring Mr. Martinez to make weekly payments on behalf of Madeline and Jairo, whom the order identified as Mr. Martinez's daughter and son, respectively.  (R. at 293-96).

Nevertheless, the Commissioner contends that the Family Court did not issue this order "because" Madeline and Jairo were Mr.

18

Martinez's children.  (Def. Memo. at 18).  The defendant points to the Findings of Fact form completed by the Family Court Hearing Examiner in which he checked the box indicating that Mr. Martinez was liable for supporting Ms. Abreu and the children "by virtue of marriage" rather than "by virtue of an order of filiation."  (Def. Memo. at 18; R. at 296).

This argument is unpersuasive for several reasons.  First, in order for Madeline and Jairo to be Mr. Martinez's  children for purposes of support, there was no requirement of an order of filiation.  Rather, they would have been recognized as his children by the Family Court because they were born to the marriage between Ms. Abreu and Mr. Martinez.  In other words, the Family Court, not surprisingly, would have applied the presumption of legitimacy in circumstances where there was no basis for doing otherwise.  At the time the order of support was issued, Ms. Abreu had not disavowed Mr. Martinez as the father, and no DNA test was performed until a decade later.  Accordingly, an order of filiation would have been wholly unnecessary.

Second, requiring that a support order be based on an order of filiation would be inconsistent with the structure of the Act.  An applicant may be deemed a child for purposes of child's insurance benefits where:

in the case of a deceased individual --

19

(i) such insured individual --

    (I) had acknowledged in writing that the applicant is his or her son or daughter,

    (II) had been decreed by a court to be the mother or father of the applicant, or

    (III) had been ordered by a court to contribute to the support of the applicant because the applicant was his or her son or daughter . . . .

42 U.S.C. § 416(h)(3)(C). Plainly, an applicant may be deemed a child under subpart III based on the order of support alone. If, as the Commissioner argues, that order must in turn be based on an order of filiation, subpart III would be mere surplusage: an applicant who has received an order of filiation would necessarily satisfy subpart II, since the insured would have been "decreed by a court to be the father or mother of the applicant." In order for subpart III to have independent force, then, it must be interpreted to include circumstances such as this where there is an order of support but no filiation order.

    Third, the Commissioner's interpretation gives insufficient recognition to the purpose of child's insurance benefits, which is to provide a substitute source of income for certain minors whom the wage earner had supported prior to his death. An order of support is evidence -- and, under the Act, conclusive evidence -- of such a relationship, independent of whether there has been a

court determination that the beneficiary is the biological child of the insured.

Certain provisions of the Act provide for an applicant to be deemed the child of the insured even in the face of contradictory facts. For example, an insured individual may have falsely acknowledged paternity in writing, but that attestation will nevertheless be sufficient to qualify the applicant for benefits. 42 U.S.C. § 416(h)(3)(C)(i)(I). Similarly, here, the order of support that, on its face, was issued because Madeline and Jairo were believed to be Mr. Martinez's children, is sufficient to support the application for child's insurance benefits. Nothing in the Act allows the Commissioner to go behind that order on the basis of subsequently discovered evidence, no matter how persuasive that evidence might be.

We may accept as fact that neither Madeline nor Jairo is the biological child of Mr. Martinez. That does not, however, preclude them from being deemed his children by operation of statute. And, having been deemed his children pursuant to 42 U.S.C. § 416(h)(3), they are likewise deemed to have been dependent upon him. Capato, __ U.S. at __, 132 S. Ct. at 2027 n.3. Madeline and Jairo are therefore eligible for benefits, and no purpose would be served by

remanding to have their eligibility reconsidered.[4]

D. Relief

The Commissioner contends that remand is necessary to allow Christopher Martinez the opportunity to present evidence or participate in any hearing. (Def. Memo. at 20). To be sure, the level of benefits to which he is entitled is affected by the eligibility of Madeline and Jairo, since, in general terms, the maximum family benefit payable on a deceased wage earner's account is divided among all the beneficiaries. 42 U.S.C. § 403(a); 20 C.F.R. §§ 404.304(d), 404.403. However, Christopher could present no evidence that would affect the eligibility of Madeline and Jairo, since they are entitled to benefits as a matter of law by virtue of the order of support.

---

[4] Although they do not develop the argument, the plaintiffs note that ALJ Heyman "ignored the Appeals Council order" when the application was first remanded, because the Appeals Council had found that the claimants "have acquired the status as children of the wage earner, and they are deemed the surviving children of the wage earner in accordance with section 216(h)(2)(A) of the Social Security Act." (Pl. Memo. at 5; R. at 224). Regulations implementing the act require application of administrative "law of the case." Specifically, when the Appeals Council remands, the ALJ "shall take any action that is ordered by the Appeals council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b); see Holman v. Colvin, No. 12 Civ. 5817, 2014 WL 941823, at *3 (S.D.N.Y. March 11, 2015); Scott v. Barnhart, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009). Here, the analysis of ALJ Heyman was arguably inconsistent with the remand order. However, as his determination must be reversed for the reasons stated here, that issue need not be decided.

The appropriate relief, then, is to remand this case to the Commissioner solely for a calculation of benefits.[5]

Conclusion

For the reasons discussed above, the plaintiffs' motion for judgment on the pleadings (Docket no. 14) is granted, the defendant's cross-motion (Docket no. 20) is denied, and the case is remanded to the Commissioner for the calculation of benefits. The Clerk of Court shall enter judgment accordingly.

SO ORDERED.

James C. Francis IV
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       October 6, 2015

Copies transmitted this date:

Guilene Cherenfant, Esq.
Legal Services NYC-Bronx
349 E. 149th St., 10th Floor
Bronx, NY 10451

Joseph A. Pantoja, Esq.
Assistant United States Attorney
86 Chambers Street
New York, NY 10007

---

[5] In her discretion, the Commissioner may include Christopher in these proceedings; but, as discussed, there would be no basis for revisiting the eligibility of Madeline and Jairo.

23